| **UNPUBLISHED ORDER** |
| Not to be cited per Circuit Rule 53 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued January 6, 2006
Decided March 15, 2006

**Before**

Hon. Frank H. Easterbrook,  *Circuit Judge*

Hon. Daniel A. Manion,  *Circuit Judge*

Hon. Diane P. Wood,  *Circuit Judge*

No. 05-1202

Aman T. Gemeda,

                    *Petitioner*,

          *v.*

Alberto Gonzales, Attorney General of the
United States,

                    *Respondent*.

Petition for Review of a Decision of the
Board of Immigration Appeals

No. A95 405 659

**O R D E R**

Aman Gemeda, a native and citizen of Ethiopia and a supporter of the Oromo Liberation Front, sought asylum, withholding of removal, and relief under the Convention Against Torture. An Immigration Judge, after discounting Gemeda's credibility, denied his application, concluding that the complained-of conduct did not rise to the level of persecution.  The Board of Immigration Appeals affirmed.  Gemeda appeals to this court.  We DENY Gemeda's petition for review.

I.

Aman Gemeda, who was born on July 14, 1973, in Bekoji, Ethiopia, is an ethnic Oromo. While enrolled in college in Alemaya, Ethiopia in the early 1990's, Gemeda supported the Oromo Liberation Front ("OLF"), attending meetings and recruiting supporters. The OLF originally participated in the political process in Ethiopia. However, as elections approached in 1992, the OLF withdrew its support from the process, claiming its candidates were harassed and attacked. The OLF then declared war on the transitional Ethiopian government.

According to Gemeda, after the OLF declared war on the transitional government, the government sent troops to Alemaya in search of student supporters of the OLF. Gemeda claims that he and two other students were detained and interrogated for fifteen days, and that during their detention, they were beaten with gun butts to coerce them to admit their OLF membership. However, Gemeda was released after denying involvement in the OLF. Because of the incident, Gemeda stopped openly supporting the OLF. He then finished his studies at Alemaya University, graduated, and obtained a job, first with the Ethiopian Ministry of National Resources and later with the Ministry of Agriculture.

About three years later, while still working for the government, Gemeda claims that members of the rival political group, the Oromo People's Democratic Organization ("OPDO"), watched him to see if he was spreading OLF ideology or was recruiting members for the OLF. Following several confrontations between the OLF and the government (none of which involved Gemeda), Gemeda sought a safer haven, leaving Ethiopia for Ireland, where he entered a Master's degree program.

While in Ireland, Gemeda claims that he began communicating with an OLF student studying in London and another living in the United States. He further claims that he tried to organize an OLF student organization but that too few Oromos attended his school, so these efforts failed. In June 2001, Gemeda returned to Ethiopia to conduct field research for his Master's program. While there, Gemeda claims that the OPDO interrogated him for three days, during which time he was beaten. Two months later, on August 19, 2001, Gemeda returned to Ireland.

On January 27, 2002, Gemeda entered the United States on a non-immigrant temporary visa, which authorized him to remain here until February 28, 2002. On February 11, 2002, Gemeda filed an application for asylum, withholding of removal and for relief under the Convention Against Torture ("CAT"). On July 31, 2003, after hearing the above evidence, an Immigration Judge ("IJ") denied Gemeda's application for asylum, and withholding of removal and relief under the CAT. After noting that Gemeda's claims of persecution were exaggerated and possibly false, the IJ concluded that even if he were credible, Gemeda was not entitled to asylum or withholding of removal because "the incidents, even if they are true, [did not] rise to

the level [of] past persecution." The IJ further concluded that because the conduct did not rise to the level of persecution, it did not satisfy the higher "torture" standard required for relief under CAT.

Gemeda appealed to the Board of Immigration Appeals ("Board"), arguing that the IJ erred in its credibility assessment and in its conclusion that Gemeda had not suffered past persecution for his support of the OLF. The Board concluded that it need not resolve the issue of credibility because, even assuming that Gemeda was credible, the conduct at issue did not rise to the level of persecution. Gemeda appeals.

II.

On appeal, Gemeda first argues that this court cannot review the Board's decision and must instead remand the case for further proceedings because the Board did not review the IJ's credibility determination or decide whether substantial evidence supported the IJ's credibility findings. Gemeda's argument is somewhat baffling. The IJ assumed that even if Gemeda's testimony was credible, these facts did not rise to the lever of persecution. In reviewing Gemeda's case, the Board likewise assumed that he was credible and fully accepted his version of the facts. Yet, even accepting as true Gemeda's claims, the Board concluded that Gemeda did not establish past persecution. Under these circumstances, because Gemeda's credibility is immaterial, there is no need to remand. *Cf., Kayembe v. Ashcroft*, 334 F.3d 231, 235 (3d Cir. 2003) (holding that where the Board did not adopt the IJ's credibility finding, an appellate court should review the Board's decision with the assumption that the petitioner was credible.)

On the merits, the Board concluded that Gemeda was not entitled to asylum or withholding of removal because he did not establish past persecution. Specifically, the Board concluded that the conduct at issue did "not rise to the level of persecution, as [Gemeda] was not seriously harmed, was held for a relatively short time, and was released to finish his education."

To obtain asylum, an alien must establish "that he is unable or unwilling to return to his home country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Guchshenkov v. Ashcroft*, 366 F.3d 554, 561 (7th Cir. 2004). Withholding of removal is appropriate if an alien establishes "it is more likely than not" that he will be persecuted if forced to return to his native country. *Prela v. Ashcroft*, 394 F.3d 515, 519 (7th Cir. 2005). This court reviews the Board's decision denying asylum and withholding of removal under the "substantial evidence" standard. *Sivaainkaran v. I.N.S.*, 972 F.2d 161, 163 (7th Cir. 1992). Under this highly deferential standard, we will uphold the Board's determination if it is "supported by reasonable, substantial, and probative evidence on the record as a whole," and we will reverse only if the evidence is so "compelling that no reasonable factfinder could fail to find the requisite . . . persecution." *Id.*

The question then is whether substantial evidence supports the Board's conclusion that the complained-of conduct did not reach the level of persecution. Gemeda focuses on his detentions in 1992 and 2001 and his claims that he was beaten on both occasions. Gemeda, however, did not describe the nature of his confinement or any physical injury. All we know from the record is that in 1992 Gemeda was not taken to prison, but instead detained on campus, and that the beating was not serious enough to warrant medical treatment. This is important because Gemeda bears the burden of proving past persecution with specific detailed facts. *Sivaainkaran*, 972 F.2d at 163. Not all physical abuse rises to the level of persecution. *See Dandan v. Ashcroft,* 339 F.3d 567, 573-74 (7th Cir. 2003) (holding that a three-day interrogation resulting in a swollen face from beatings did not constitute past persecution for asylum purposes); *Prela*, 394 F.3d at 518 (7th Cir. 2005) (holding that an applicant who was "interrogated at various times by the police, detained for twenty-four hours, harassed for money, and beaten, causing an injury to his hands" did not suffer past persecution). In this case, Gemeda's general claims of two isolated beatings mirror the situations in *Dandan* and *Prela*. Moreover, here, the Board had before it the added fact that after the 1992 incident, Gemeda was released and allowed to finish school and that he then worked for the government from 1996 to 2000. Under these circumstances, substantial evidence supports the Board's decision that the complained-of conduct did not reach the level of past persecution.

In seeking reversal of the Board's decision, Gemeda also argues that the Board erred in denying him asylum because it only considered his claim of persecution as a supporter of the OLF and did not consider evidence showing that Gemeda was arrested and beaten because he was an ethnic Oromo. Citing *Mgoian v. I.N.S.*, 184 F.3d 1029, 1035 (9th Cir. 1999), Gemeda further argues that he need not establish that he personally suffered past persecution because Ethiopia has a pattern and practice of persecuting ethnic Oromos. *Id.* ("On the other hand, the applicant is not required to show that '[she] would be singled out individually for persecution if . . . there is a pattern or practice . . . of persecution of groups of persons similarly situated' . . . ."). Gemeda then asserts that given that Ethiopia has a pattern or practice of persecuting ethnic Oromos, he has a well-founded fear of future persecution.

Gemeda, however, did not present his ethnic-Oromo claim to the Board.[1] An alien must raise and exhaust administrative remedies as to each claim or ground for relief. *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004). Failure to present an issue to the Board constitutes a failure to exhaust his administrative remedies and deprives this court of jurisdiction over that issue. *Mojsilovic v. I.N.S.*, 156 F.3d 743, 748 (7th Cir. 1998). Because Gemeda did not present his pattern and practice of persecuting ethnic Oromos claim to the Board, he did not exhaust his administrative remedies and has waived this issue.

---

[1] Although Gemeda claims on appeal that he did present his ethnic-Oromo claim to the Board, a thorough reading of his brief to the Board disproves his assertion.

Similarly, Gemeda's attempt to argue on appeal for relief under CAT fails because he did not present this argument to the Board. Moreover, withholding of removal under CAT requires an alien to establish that he is more likely to be tortured than not. *Prela*, 394 F.3d at 519. This standard is more difficult to satisfy than the past persecution standard. *Id.* Therefore, even if Gemeda properly presented this argument to the Board, he could not succeed under CAT because he did not satisfy the more lenient "persecution" standard.

## III.

Gemeda sought asylum and withholding of removal, claiming past persecution based on his support of the OLF. The Board concluded that the conduct at issue did not rise to the level of persecution. Substantial evidence supports this conclusion. Therefore, we DENY Gemeda's petition for review.