NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 17, 2008
Decided January 15, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-1054

| | |
|---|---|
| SLIMANE BENABBI, | Petition for Review of an Order of the |
| *Petitioner,* | Board of Immigration Appeals. |
| | |
| *v.* | No. A76 766 317 |
| | |
| MICHAEL B. MUKASEY, | |
| *Respondent.* | |

**O R D E R**

Facing removal proceedings after overstaying his tourist visa, Slimane Benabbi applied for asylum and withholding of removal, claiming that if he is forced to return to his native Algeria, Islamic fundamentalists will persecute him because of his "pro-western" views and Berber ethnicity. The immigration judge concluded that Benabbi's asylum application was time-barred, and denied his application for withholding of removal after finding that he had not established past persecution or a clear probability of future persecution. The BIA affirmed, and Benabbi petitions for review of his application for withholding of removal. Because the record does not compel the conclusion that Benabbi more likely than not will be persecuted if he returns to Algeria, we deny the petition.

Benabbi entered the United States as a tourist in June 1999 and when his visa expired three years later, he remained, and was placed in removal proceedings. Benabbi applied for asylum and withholding of removal on the basis of his Berber ethnicity, political opinion, and membership in a particular social group, namely "the pro-western group of Berbers who oppose the imposition of Islamic regime." Berbers are an ethnic minority comprising roughly one-third of the Algerian population, and, according to Benabbi, they are identifiable by their light skin and hair. Benabbi presented evidence that Berbers are associated with "western" values and secular culture and consequently are targeted by the Islamic fundamentalist movement in Algeria.

At his removal hearing, Benabbi testified that he operated a wholesale merchandise business in Kabylia, a Berber enclave approximately 100 miles from his home in Algiers. Benabbi testified that "on many occasions," self-described "revolutionary people" solicited him at his business and threatened to kill him when he refused to give them money for "the revolution." Although the men did not identify themselves as such, Benabbi testified without elaboration that he believes they were from the terrorist group GIA ("*Groupe Islamique Armé*"). According to Benabbi, he refused to give the terrorists money because he is "categorically against" their anti-western, anti-democratic ideology. He did not specify whether he voiced these beliefs to the men or simply declined to give them money.

Although Benabbi testified generally that the terrorists asked him for money and threatened him "many times," when pressed he could recall only two such encounters. Once, in the summer or fall of 1998, he said, two men came to his business and asked him for money, but he refused. A second incident, he said, occurred at a café near his business, where different terrorists asked him for money and again he refused. Benabbi did not elaborate on either encounter, but admitted that he was never harmed. He also testified that he was never threatened by terrorists at his home in Algiers.

As a result of these encounters, Benabbi explained, he decided to abandon his business, and within a year he traveled to the United States. Benabbi testified that he is afraid to return to Algeria because, since he refused to give the terrorists money, "they have my name, and I'm on the list, so they may kill me." Benabbi testified that he speaks to his family in Algeria weekly and they warn him not to return because it is "too dangerous" for him there. But when asked to elaborate, Benabbi only reiterated that terrorists target "pro-western" people and his name is on "the list."

The IJ found Benabbi's asylum application time-barred because he did not file it within a year of arriving in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). Turning to Benabbi's application for withholding, the IJ fully credited Benabbi's testimony, but found

that Benabbi's experiences did not rise to the level of past persecution, noting that "he was asked for money, he was not threatened with any weapon, he refused to provide these men money, and left without being harmed." The IJ also noted that Benabbi had not presented any evidence that he was targeted because he is Berber. The IJ thus concluded that Benabbi had not demonstrated a clear probability of future persecution. The BIA agreed.

In his petition for review, Benabbi challenges only the denial of his application for withholding of removal. Where, as here, the Board affirms the IJ's decision in a brief order, this court reviews the IJ's decision as supplemented by the Board. *See Bosede v. Mukasey*, 512 F.3d 946, 950 (7th Cir. 2008). We will uphold the agency's decision denying withholding of removal so long as it is supported by substantial evidence, and will overturn it "only if the record compels a contrary result." *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007).

To qualify for withholding of removal, an applicant must demonstrate a clear probability ("more likely than not") of future persecution on account of his race, religion, nationality, membership in a social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A), (C); *Irasoc v. Mukasey*, 522 F.3d 727, 729-30 (7th Cir. 2008). If the applicant establishes that he suffered past persecution, as Benabbi attempts to do here, he is entitled to a rebuttable presumption of future persecution. *See Guardia v. Mukasey*, 526 F.3d 968, 971 (7th Cir. 2008).

Benabbi first argues that the IJ should have found that he suffered past persecution because he was "threatened with assassination" by "extortionists" when he refused to support their cause. He emphasizes that his subjective fear was so strong that he abandoned his business "for the sake of saving his life," and cites U.S. Department of State Country Reports stating that terrorists often carry out violent reprisals against businessmen who refuse to pay them a "tax."

To constitute persecution, conduct must rise above "mere harassment." *Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005). And unfulfilled threats will qualify as persecution "only in the most extreme circumstances, such as where they are of a most immediate or menacing nature or if the perpetrators attempt to follow through on the threat." *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006). Although Benabbi testified that terrorists "threatened" him on numerous occasions, when asked to elaborate, he described two unremarkable and apparently unrelated encounters in which men merely requested money for "the revolution" and left him unharmed when he declined. Benabbi asserts generally that these encounters caused him to abandon his business, but he did not testify that the terrorists threatened to return or even exchanged any words with him beyond asking for money. In evaluating whether an applicant has suffered persecution, the IJ is entitled to take into account the applicant's failure to provide sufficient detail, and need not defer to

the applicant's unsupported assertions of endangerment. *See Ahmed v. Ashcroft*, 348 F.3d 611, 615-16 (7th Cir. 2003); *Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003). Here, the generalized, subjective evidence that Benabbi presented would barely compel the conclusion that he was harassed, let alone persecuted. Accordingly, the IJ's conclusion that Benabbi did not suffer past persecution is supported by substantial evidence.

Benabbi also argues that, even if he has not established past persecution, he has demonstrated a clear probability of future persecution because, he believes, "he was put on the assassination list, and upon his return to Algeria his old enemies would try to kill him." But Benabbi has failed to demonstrate that his subjective fear of future persecution is objectively reasonable. *See Zheng v. Gonzales*, 409 F.3d 804, 809 (7th Cir. 2005). He did not elaborate on this "assassination list" in his testimony, nor did he suggest that any terrorists could identify him, let alone consider him an "enemy." Although Benabbi testified that his family warns him that Algeria is "too dangerous" for him, those warnings are too generalized to be probative of future persecution. Furthermore, Benabbi's former business is 100 miles away from his home town, Algiers, and he admits that terrorists never confronted him at home during the year preceding his departure. Thus, he presented no evidence showing that terrorists sought him back in 1999 or would seek him today.

Because Benabbi's evidence falls far short of compelling a finding that he will more likely than not face persecution if returned to Algeria, the petition for review is DENIED.